UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Slumberland, Inc.,<br><br>       Plaintiff,<br><br>v.<br><br>SHF Holdings Slumberbest LLC d/b/a Slumberbest,<br><br>       Defendant. | Case No.  24-cv-04549<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Slumberland, Inc. brings this action against Defendant SHF Holdings Slumberbest LLC for willful trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, common law unfair competition, and deceptive trade practices under Minn. Stat. §§ 325D.43 *et seq.*

## INTRODUCTION

1. This case arises from Defendant SHF Holdings Slumberbest LLC d/b/a Slumberbest's ("Slumberbest") intentional and willful infringement of Plaintiff Slumberland, Inc.'s ("Slumberland") rights in and to a family of SLUMBERLAND trademarks and service marks.

2. Slumberland and its affiliates are the franchisors of the SLUMBERLAND® brand of retail stores. In 2021, Slumberbest's managing member, Michael McCord, contacted Slumberland and initiated a lengthy exploration of opening a Slumberland franchised store. After months of emails,

phone calls, and in-person meetings, Mr. McCord decided not to become a Slumberland franchisee. Slumberland was disappointed that a franchise relationship did not come to fruition but nonetheless respected Mr. McCord's decision.

3. A few years later, in 2024, Mr. McCord took everything he learned from Slumberland and opened a competing retail store under the confusingly similar name "Slumberbest"—a willful and intentional infringement of Slumberland's trademark rights. Slumberland discovered the competing business over the summer and swiftly tried to reach an amicable resolution. Slumberbest largely ignored Slumberland's efforts. When it did respond, Slumberbest disputed the parties' established history and the clear infringement of Slumberland's trademarks. Thus, Slumberbest has forced Slumberland's hand, and Slumberland brings this suit to ensure compliance with its long-established trademark rights.

## PARTIES

4. Plaintiff Slumberland, Inc. ("Slumberland") is a Minnesota corporation with a principal place of business at 3505 High Point Drive North, Oakdale, Minnesota 55128.

5. Defendant SHF Holdings Slumberbest LLC d/b/a Slumberbest ("Slumberbest") is a Kentucky limited liability company having a principal place of business at 10906 Jordain Drive, Louisville, Kentucky 40241.

## **JURISDICTION**

6. This Court has federal question jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338. This Court's jurisdiction over the state law claims arises under 28 U.S.C. § 1338(b), because those claims are joined with substantial and related claims under federal trademark law, and under 28 U.S.C. § 1367(a), under this Court's supplemental jurisdiction.

7. This Court has personal jurisdiction over Slumberbest because Slumberbest has sufficient minimum contacts with Minnesota and Slumberland's claims arise from or are related to Slumberbest's contacts with Minnesota. Additionally, this Court has personal jurisdiction over Slumberbest because Slumberbest's actions alleged herein were intentional, were aimed to cause harm to Slumberland in Minnesota, and caused harm that is suffered by Slumberland in Minnesota. Specifically, Slumberbest's managing member had extensive phone and email discussions with Slumberland representatives located in Minnesota about becoming a Slumberland franchisee, submitted information to Slumberland in furtherance of exploring a franchise relationship with Slumberland, executed documents in furtherance of the potential franchise opportunity, and traveled to Minnesota to meet with Slumberland about becoming a Slumberland franchisee. Slumberbest's managing member learned of Slumberland's services, business

model, and trademarks throughout these discussions. Slumberbest's managing member abandoned the franchising discussions and later opened his own retail store offering the same or similar goods and services as Slumberland to the same or similar class of customers—all under a name (Slumberbest) that is confusingly similar to Slumberland's trademarks and with full knowledge of Slumberland's trademarks. Given the intentional nature of the wrongful actions alleged herein, the exercise of personal jurisdiction over Slumberbest comports with due process.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to Slumberland's claims occurred in this judicial district, Slumberbest is an entity with the capacity to sue and be sued under applicable law and is subject to this Court's personal jurisdiction with respect to this civil action, Slumberland has its principal place of business in this judicial district, and Slumberland continues to be harmed by Slumberbest's wrongful conduct in this judicial district, including, without limitation, Slumberbest's intentional infringement of Slumberland's trademarks.

## FACTUAL BACKGROUND

**I.  Slumberland's trademark rights.**

9. Slumberland was founded in 1967 as a "sleep store" that offered sleep furniture such as mattresses, box springs, bed frames, headboards, sheets,

blankets, pillows, and so forth. It quickly became a household name for its high-quality services.

10. In 1975, Slumberland adopted a franchise model that has been carefully cultivated and modernized to keep up with the economic retail store climate.

11. In addition to its core business of offering sleep furniture, Slumberland has expanded its product offerings to include sofas, recliners, tables, outdoor furniture, area rugs, bedroom and dining furniture, and more. Slumberland-branded businesses feature best-in-class products from brands such as Sealy, Tempur-pedic, Purple, Nectar, Ashley, Flexsteel, and La-Z-Boy, as well as its own in-house brands of mattresses, "Slumberland" and "Slumbercrest."

12. Slumberland is much more than a basic retail store. Slumberland employees take a unique, customer-centric approach to develop a tailored mattress and bedding solution that meets the customer's individual needs.

13. Today, Slumberland has approximately 70 franchisees that operate brick-and-mortar stores in 12 states.

14. The majority of Slumberland's franchisees are located in the Minnesota and Wisconsin. Slumberland also has franchisees located in Illinois, Iowa, Kansas, Michigan, Missouri, Montana, Nebraska, North Dakota, South Dakota, and Wyoming.

15. Slumberland actively works to find promising new franchisees and expand its franchise to serve additional markets. One such market is Louisville.

16. Slumberland operates an online store at the URL www.slumberland.com. Through the online store, customers from trade areas beyond the physical store locations purchase goods from Slumberland franchisees.

17. Slumberland's franchisees and online stores have sold goods to customers in Kentucky, including customers located in Louisville and Lexington.

18. Slumberland is the owner of all right, title, and interest in and to a family of SLUMBERLAND-formative trademarks and service marks, including but not limited to the following marks and registrations therefor on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Mark Information | First Use in Commerce | Goods or Services |
|---|---|---|
| SLUMBERLAND<br>Reg. No. 4,739,125 | 1967 | IC 35: On-line retail store services featuring furniture and mattresses; Retail store services featuring furniture and mattresses |
| slumberland<br>Reg. No. 1,967,577 | 1967 | IC 35: Retail store services in the fields of mattresses and furniture |
| SLUMBERLAND FURNITURE<br>Reg. No. 2,247,003 | February 1991 | IC 35: Retail store services in the fields of mattresses and furniture |
| SLUMBERCREST<br>Reg. No. 5,967,018 | July 8, 2019 | IC 20: Mattresses |

19. Slumberland's Registration Nos. 4,739,125; 1,967,577; and 2,247,003 are incontestable pursuant to 15 U.S.C. §§ 1065 and 1115(b), and are thus conclusive evidence of the registrations' validity and of the validity of the marks covered by each registration, and of Slumberland's ownership of, and exclusive right to use, the marks covered by the registrations. Slumberland's Registration No. 5,967,018 is *prima facie* evidence of the registration's validity and of the validity of the mark covered by the registration, and of Slumberland's ownership of, and exclusive right to use, the mark covered by the registration. A copy of the USPTO registration certificates and a printout of USPTO records showing the current status and title for each of the registrations listed in the preceding paragraph is attached as **Exhibit A**.

20. Slumberland and its affiliates have continuously used the SLUMBERLAND Marks in commerce since their dates of first use in commerce.

21. In addition to its registered marks, Slumberland has developed strong common law rights in its SLUMBERLAND and SLUMBERLAND-formative marks in the United States by virtue of its widespread, continuous, and exclusive use of these marks in commerce to identify its retail store services. Slumberland's common law marks, together with the registered marks identified in the chart in paragraph 16, are collectively referred to as the "SLUMBERLAND Marks."

22. The SLUMBERLAND Marks are inherently distinctive. Additionally, they have been extensively used, promoted, and advertised by SLUMBERLAND in connection with its services for many years, and are thus distinctive indicators of Slumberland and its franchisees as the source of high-quality goods and services offered under the SLUMBERLAND Marks, generating valuable goodwill for the SLUMBERLAND Marks and for Slumberland.

23. Slumberland and its affiliates have spent significant money, time, and effort in advertising and promoting the SLUMBERLAND Marks throughout the United States. Through such efforts, the SLUMBERLAND Marks have become associated in the minds of purchasers of furniture, and in the mind of the general public and trade, with Slumberland alone. The SLUMBERLAND Marks have acquired substantial goodwill through Slumberland's continuous and extensive use and promotion of the marks in connection with its franchised business.

24. The public's trust in and recognition of the SLUMBERLAND Marks is vital to the success of Slumberland and its franchisees.

II. **Slumberbest's infringing activities.**

25. Slumberbest was formed in January 2024.

26. Michael McCord is Slumberbest's managing member.

27. Mr. McCord is a businessman who has operated retail stores under several franchises.

28. Before 2020, Mr. McCord operated a furniture retail store in the Art Van Furniture franchise system. Art Van Furniture filed bankruptcy in 2020 and began the process of closing all of its franchise locations.

29. In 2021, during his exit from the Art Van Furniture franchise, Mr. McCord contacted Slumberland and sought out information about becoming a Slumberland franchisee.

30. Mr. McCord and Slumberland had extensive discussions about the possibility of Mr. McCord becoming a Slumberland franchisee. Mr. McCord exchanged many emails and had many phone calls with Slumberland representatives about a possible franchise relationship.

31. Mr. McCord submitted many documents to Slumberland in furtherance of a possible franchise relationship. Such documents include a franchise application, a personal financial statement, a personality assessment, renderings of his then-existing building that showed remodeled exteriors that displayed the SLUMBERLAND marks, written confirmation that he received Slumberland's Financial Disclosure Document, and other related documentation.

32. On April 6 and 7, 2021, Mr. McCord attended an in-person event at Slumberland's headquarters in Oakdale, Minnesota. This event, "Discovery Day," was a two-day meeting wherein Slumberland representatives met with Mr. McCord and further explored the franchise opportunity. Slumberland

representatives gave presentations about the Slumberland franchise and business model, including aspects of the business such as finances, operation strategies, marketing strategies, merchandise, product lines, partnerships, logistics, store design, and much more. Mc. McCord visited Slumberland's corporate-owned retail store in Woodbury, Minnesota, during the Discovery Day event.

33. On March 30, 2021, Slumberland representatives conducted an on-site visit of a store that Mr. McCord owned in Evansville, Indiana, to evaluate whether it could be approved as a future Slumberland retail store location. During the visit, Mr. McCord and Slumberland representatives continued the discussions about Mr. McCord becoming a Slumberland franchisee.

34. On May 12, 2021, Mr. McCord met with Slumberland representatives again, this time at a store in Peoria, Illinois. The franchising discussions continued during this store visit. Additionally, Slumberland showed Mr. McCord its newest visual brand elements and demonstrated its point-of-sale system so that he could learn how a regional store location operates.

35. Through these discussions, Mr. McCord became extremely familiar with the Slumberland franchise and business model, as well as the SLUMBERLAND Marks.

36. Mr. McCord was a serious franchisee candidate. However, despite the parties' extensive discussions, Mr. McCord did not become a franchisee.

37. In 2024, Mr. McCord opened a new business that operates under the name "Slumberbest."

38. Slumberbest provides furniture retail store services and specializes in sleep furniture, mattresses, and bedding.

39. Slumberbest offers sleep products from several brands, including Tempur-pedic.

40. On information and belief, Slumberbest sells products at the same or similar price points as Slumberland.

41. On information and belief, Slumberbest targets customers having similar demographics as customers of Slumberland.

42. Slumberbest adopted its name and mark with full knowledge and awareness of Slumberland and the SLUMBERLAND Marks.

43. In the summer of 2024, Slumberland discovered that Mr. McCord opened and began operating Slumberbest.

44. In August 2024, Slumberland sent Slumberbest a letter stating that Slumberbest was infringing Slumberland's rights in the SLUMBERLAND Marks. Slumberland requested that Slumberbest cease and desist from all use of the term "Slumberbest," rebrand its store, and take other measures to rectify the infringement.

45. Slumberbest responded through counsel on September 3, 2024. Despite the extensive history between the parties, Slumberbest contended that it "had no knowledge of the existence of [Slumberland] or its business when it opened." Slumberbest also disputed that it infringed the SLUMBERLAND Marks.

46. On September 20, 2024, Slumberland sent another letter to Slumberbest outlining the falsity of Slumberbest's assertion that it did not know of Slumberland before opening in 2024. Slumberland reasserted its cease-and-desist requests.

47. As of the date of the filing of this Complaint, Slumberbest has not agreed to Slumberland's reasonable requests. Thus, Slumberbest still operates under the name "Slumberbest" in full violation of Slumberland's trademark rights.

## COUNT I
### Service Mark Infringement (15 U.S.C. § 1114(1)(a))

48. Slumberland incorporates the allegations in all preceding paragraphs by reference as if fully set forth herein.

49. As a separate cause of action and ground for relief, Slumberland alleges that Slumberbest has been and is currently engaged in acts constituting infringement of Slumberland's SLUMBERLAND Marks within the meaning of Section 32(1) of the Trademark Act of 1946, 15 U.S.C. § 1114(1), through Slumberbest's use, in commerce, of marks, names, and logos that are confusingly similar to the SLUMBERLAND Marks in connection with the sale, offering for sale,

and advertisement of services that are identical or closely related to the services provided by Slumberland under the SLUMBERLAND Marks and in a manner that creates a likelihood of confusion, mistake, or deception.

50. Slumberbest's infringing conduct is willful, is causing and is likely to cause injury to the public, and is causing and is likely to cause Slumberbest to incur damages and suffer irreparable injury for which Slumberland has no adequate remedy at law. Slumberland is entitled to damages and injunctive relief pursuant to 15 U.S.C. §§ 1114, 1116, 1117, and 1118.

## COUNT II
### Unfair Competition (15 U.S.C. § 1125(a))

51. Slumberland incorporates the allegations in all preceding paragraphs by reference as if fully set forth herein.

52. As a separate cause of action and ground for relief, Slumberland alleges that Slumberbest, by using in commerce marks, names, and logos that are confusingly similar to the SLUMBERLAND Marks in connection with the sale, offering for sale, and advertisement of services that are identical to or closely related to the services provided by Slumberland under the SLUMBERLAND Marks, has caused a likelihood of confusion, deception, and/or mistake as to the affiliation, connection, or association of Slumberbest with Slumberland, or as to the origin, sponsorship, or approval of services offered by Slumberbest, or by

Slumberland, in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

53. Slumberbest's actions constitute willful unfair competition by false designation of origin within the meaning of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), and have caused and are likely to cause injury to the public, and have caused and are likely to cause Slumberland to incur damages and suffer irreparable injury for which Slumberland has no adequate remedy at law. Slumberland is entitled to damages and injunctive relief pursuant to 15 U.S.C. §§ 1114, 1116, 1117, and 1118.

## COUNT III
### Unfair Competition (Minnesota Common Law)

54. Slumberland incorporates the allegations in all preceding paragraphs by reference as if fully set forth herein.

55. As a separate cause of action and ground for relief, Slumberland alleges that Slumberbest, by using marks, names, and logos that are confusingly similar to the SLUMBERLAND Marks in connection with the sale, offering for sale, and advertisement of services that are identical to or closely related to the services provided by Slumberland under the SLUMBERLAND Marks, has caused a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of Slumberbest with Slumberland, or as to the origin, sponsorship, or approval of services offered or sold by Slumberbest, or by Slumberland. These acts

and business practices constitute unfair competition in violation of the common law of the State of Minnesota.

56.  Slumberbest's infringing conduct is causing and is likely to cause injury to the public, and is causing and is likely to cause Slumberland to incur damages and suffer irreparable injury for which Slumberland has no adequate remedy at law. Slumberland is entitled to damages and injunctive relief pursuant to the common law of the State of Minnesota.

## COUNT IV
### Deceptive Trade Practices (Minn. Stat. §§ 325D.43 *et seq.*)

57.  Slumberland incorporates the allegations in all preceding paragraphs by reference as if fully set forth herein.

58.  As a separate cause of action and ground for relief, Slumberland alleges that Slumberbest, by using in commerce marks, names, and logos that are confusingly similar to the SLUMBERLAND Marks in connection with the sale, offering for sale, and advertisement of services that are identical to or closely related to the services provided by Slumberland under the SLUMBERLAND Marks, causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, or causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, Slumberland, within the meaning of the Minnesota Uniform

Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43 *et seq.*, and in violation of Minn. Stat. § 325D.44.

59. Slumberbest's actions constitute willful deceptive trade practices within the meaning of Minn. Stat. §§ 325D.43 *et seq.* Slumberland is likely to be damaged by Slumberbest's actions, and is entitled to injunction, costs, and attorneys' fees, pursuant to Minn. Stat. § 325D.45.

## COUNT V

### Unlawful Registration and/or Use of a Domain Name in Violation of 15 U.S.C. § 1125(d)

60. Slumberland incorporates the allegations in all preceding paragraphs by reference as if fully set forth herein.

61. As a separate cause of action and ground for relief, Slumberland alleges that Slumberbest, itself or through a registered agent, the proxy registrant organization Domains by Proxy, LLC, has improperly registered and/or is improperly using the domain name <slumberbest.com>, in violation of the rights of Slumberland under Section 43(d) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(d).

62. Slumberland owns the SLUMBERLAND Marks and has owned those marks since long before any registration or other acquisition, or use, by Slumberbest of the domain name <slumberbest.com>.

63. The SLUMBERLAND Marks were distinctive at the time Slumberbest registered or acquired the domain name <slumberbest.com>.

64. Slumberbest registered or otherwise acquired ownership of the domain name <slumberbest.com> without the authorization of Slumberland, and with a bad-faith intent to profit from Slumberland's SLUMBERLAND Marks.

65. Slumberbest uses the domain name <slumberbest.com> in connection with an email address, [sales@slumberbest.com](mailto:sales@slumberbest.com), and a website, at URL [www.slumberbest.com](http://www.slumberbest.com), with a bad-faith intent to profit from Slumberland's SLUMBERLAND Marks, and Slumberbest does so profit.

66. The domain name <slumberbest.com> is confusingly similar to the SLUMBERLAND Marks.

67. Slumberbest has no service mark rights in SLUMBERBEST or in <slumberbest.com>.

68. Slumberland is entitled to an order from the Court that the domain name <slumberbest.com> should be transferred to Slumberland, or forfeited, or cancelled.

69. As a direct result of Slumberbest's actions, Slumberland has suffered and is continuing to suffer irreparable injury. Unless enjoined by this Court, these wrongful acts will continue to injure Slumberland and the public.

## PRAYER FOR RELIEF

WHEREFORE, Slumberland requests that the Court enter an order and judgment against Slumberbest:

A.   Permanently enjoining and restraining Slumberbest, and all persons acting in active concert or participation with it, from:

(1)   using the marks, names, and logos "Slumberbest" and any other mark, name, logo, or domain name that is confusingly similar to the SLUMBERLAND Marks; and

(2)   representing, directly or indirectly, that there is any connection between Slumberland and Slumberbest, or doing any other acts or things calculated or likely to cause confusion, mistake, or deception among members of the public or members of the trade as to the source, sponsorship, affiliation, or approval of Slumberbest's services.

B.   Directing that Slumberbest, at its own expense, destroy all marketing, promotional, and advertising materials, and edit all websites and social media presences or postings, and cease use of all domain names or web page URLs or sub-URLs that bear or incorporate any mark, name, or term featuring the term "Slumberbest" and any other mark or name that is confusingly similar to the SLUMBERLAND Marks.

C.  Directing Slumberbest to assign to Slumberland any domain name it owns that comprises or contains the term "Slumberbest," including the domain name <slumberbest.com>.

D.  Directing Slumberbest to file with this Court and to serve upon Slumberland, within thirty (30) days after issuance of an injunction in this action, a written report setting forth in detail the manner in which Slumberbest has complied with the injunction.

E.  Awarding Slumberland the damages it has sustained and the profits Slumberland has derived as a result of the acts complained of herein, trebled, together with prejudgment interest, and its costs and reasonable attorneys' fees incurred in this action, to the extent permitted by law.

F.  Award Slumberland such other and further relief as this Court deems just and proper.

G.  Enter an order awarding Slumberland any other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Slumberland, by counsel, requests a jury trial for all issues triable.

Respectfully submitted,

Dated:  December 19, 2024

**LATHROP GPM LLP**

By:   /s/ *Loren L. Hansen*
James A. Wahl (#170501)
Loren L. Hansen (#387812)
Lee B. Bennin (#400809)
3100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: 612-632-3000
Fax: 612-632-4444
james.wahl@lathropgpm.com
loren.hansen@lathropgpm.com
lee.bennin@lathropgpm.com

**ATTORNEYS FOR PLAINTIFF**